UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| KIMBERLY HIGDON<br>　　　　　Plaintiff,<br>v.<br><br>KEOLIS COMMUTER SERVICES, LLC<br>　　　　　Defendant. | )<br>)<br>)<br>)<br>)　Civil Action No. 1:16-cv-11587-MBB<br>)<br>)<br>)<br>)<br>) |

**CONSOLIDATED OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF PURPORTED OSHA VIOLATION AND TO RULE THAT ANY SUCH VIOLATION WOULD NOT CONSTITUTE NEGLIGENCE PER SE AND WOULD NOT BAR A FINDING OF COMPARATIVE NEGLIGENCE**

The plaintiff, Kimberly Higdon, addressed many of the issues raised by the defendant, Keolis Commuter Services, LLC, in her motion *in limine* on the same topic. (ECF No. 32). Such argument is incorporated by reference into this opposition to the defendant's motions in limine number 6 and 7. (ECF No. 40, 41).

In short, Keolis argues that OSHA regulations regarding aisles and passageways do not apply because a 1978 Policy Statement issued by the Federal Railroad Administration ("FRA") preempts them. This argument is incorrect for two principal reasons. First, applying First Circuit precedent, the 1978 Policy Statement does not preempt the OSHA regulations at issue because it is not an actual exercise of the FRA's authority, but rather a statement as to policy about which the FRA claims to have jurisdiction to regulate. Second, even if the Policy Statement constitutes an exercise of authority, it does not cover the area at issue in this litigation.

**I. The 1978 Policy Statement is not an exercise of the FRA's regulatory authority.**

As Keolis concedes in its motion, the Policy Statement was issued only after the FRA terminated a rulemaking procedure. 50 F.R. 10583, 10584. OSHA's negative preemption statute

states that OSHA oversight does not "apply to working conditions of employees with respect to which other Federal agencies . . . exercise statutory authority to prescribe or enforce standards or regulations affecting occupational safety or health." 29 U.S.C. § 653(b)(1). The First Circuit has held this to mean that this "exemption does not oust OSHA of its regulatory authority where such an agency has regulatory authority but has not exercised such authority." *PBR, Inc. v. Secretary of Labor*, 643 F.2d 890, 896 (1st Cir. 1981). "Thus, in order for the exemption to apply it must be shown that another agency has exercised its authority to regulate the 'working condition' involved here . . . ." *Id.*

The Policy Statement, by its own terms, only concerns "the relationship between the respective jurisdictions of FRA and OSHA." 50 F.R. 10583, 10584. Therefore it is not an exercise of jurisdiction, but rather a statement of the FRA's opinion as to the scope of its jurisdiction when it ultimately chooses to exercise it. Keolis has pointed to no FRA regulation actually addressing safety on the aisles and passageways around trains in a coach house. Undersigned counsel has likewise found none. This is because the FRA has not exercised any jurisdiction over the working conditions in this area. Thus the OSHA regulations at issue apply to Keolis. The Second Circuit has stated that the OSHA negative preemption provision "'was not intended to eliminate OSHA's jurisdiction merely on the basis of hypothetical conflicts,' nor 'designed to provide wholesale exceptions for entire industries.'" *See Manes v. Metro-N. Commuter R.R.*, 801 F. Supp. 954 (D. Conn. 1992) (recognizing that the negative preemption provision "was not intended to eliminate OSHA's jurisdiction merely on the basis of hypothetical conflicts"), aff'd sub nom. *Manes v. Metro-N. Com Rail*, 990 F.2d 622 (2d Cir. 1993).

**II. Even if the 1978 Policy Statement is an Exercise of Jurisdiction, by its own terms it did not Extend to the Area at issue in this Litigation.**

Ms. Higdon tripped and fell when walking on a passageway or aisle alongside a train coach while the train coach was in the coach house for repairs. The workplace at issue was not outside, was

2

not a train yard, and did not have active trains moving through it. Instead, coaches were brought into the coach house for service and maintenance and were stationary and disconnected from any engine while Ms. Higdon and others performed service on them.

According to the 1978 Policy Statement, it would be impractical for the FRA "to address all occupational safety and health issues which arise in the railroad yards, shops, and associated offices." 50 F.R. 10583, 10587. Further, particularly regarding walking-working surfaces, OSHA regulations are generally "applicable in railroad office, shops, and other *fixed work places*." *Id.* (emphasis added). The coach house where Ms. Higdon worked was a fixed work place shop. Coaches came into that area to be fixed and left once the repairs had been made. Ms. Higdon did not get injured while a train was in motion or in a yard.

Keolis relied on two stated exceptions in the Policy Statement under which the FRA claimed to have the ability to exercise jurisdiction. The first involved "the safe movement of rolling stock through railroad repair shops." *Id.* Ms. Higdon's injury occurred on a concrete platform next to a stationary coach, and did not involve "rolling stock through railroad repair shops." Therefore, this area of jurisdiction did not apply. The second exception to OSHA's jurisdiction as claimed by the FRA involves "ladders, platforms, . . . railroad bridges, turntables, and similar structures or to walkways *beside the tracks in yards* or *along the right-of-way*." *Id.* Ms. Higdon's injury did not occur in a location through which trains ran. She did not fall on a hazard in a train yard or along a right-of-way. The FRA's own Policy Statement does not cover the area where Ms. Higdon fell, and therefore does not preclude the application of OSHA regulations to the coach house aisle or passageway where Ms. Higdon fell.

## Conclusion

For the reasons set forth above, and in the plaintiff's motion *in limine*, the plaintiff seeks an order precluding the defendant from introducing evidence or making argument that: Ms. Higdon

was negligent or that her negligence contributed to her injuries, or that the doctrines of comparative or contributory negligence applies and seeks denial of Motions in Limine 6 and 7 filed by the defendant.

                                              Respectfully submitted,

                                              Kimberly Higdon
                                              By her attorneys,

                                                /s/ Joshua M. D. Segal
                                              Joshua M. D. Segal (BBO# 678367)
                                                   JSegal@Lawson-Weitzen.com
                                              Laura Sawyer (BBO# 699560)
                                                   LSawyer@Lawson-Weitzen.com
                                              LAWSON & WEITZEN, LLP
                                              88 Black Falcon Avenue, Suite 345
                                              Boston, Massachusetts 02110
                                              Tel: (617) 439-4990
                                              Fax: (617) 439-3987

Dated: January 24, 2018

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this filing will be served on all other counsel of record through the ECF System on the date of filing, January 24, 2018.

                                                /s/ Joshua M. D. Segal
                                              Joshua M. D. Segal (BBO# 678367)