UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KIMBERLY HIGDON,
Plaintiff,

v.

CIVIL ACTION NO.
16-11587-MBB

KEOLIS COMMUTER SERVICES, LLC,
Defendant.

**MEMORANDUM AND ORDER RE:**
**MOTIONS IN LIMINE (DOCKET ENTRY ## 32, 40, 41)**

**January 29, 2018**

**BOWLER, U.S.M.J.**

Pending before this court are the above motions in limine. (Docket Entry ## 32, 40, 41). The motions raise complicated issues of the application of an Occupation Health and Safety Act ("OSHA") negative preemption statute, 29 U.S.C. § 653(b)(1) ("section 653(b)(1)"); a comparative negligence bar under the Federal Employers' Liability Act ("FELA") when a safety statute applies, 45 U.S.C. § 53 ("section 53"); and the continued viability in certain respects of the First Circuit's decision in Pratico v. Portland Terminal Co. decision, 783 F.2d 255 (1st Cir. 1985) ("Pratico"). More specifically, the issues include: (1) whether to exclude the aisles and passageways OSHA regulation, 29 C.F.R. § 1910.22(b)(1) (2015), plaintiff Kimberly Higdon ("plaintiff") cites from evidence as subject to preemption under section 653(b)(1); (2) whether a violation of the regulation

constitutes negligence per se or only evidence of negligence on the part of defendant Keolis Commuter Services, LLC (“Keolis”); and (3) whether the regulation is a safety statute under section 53 which precludes any reduction of a recovery based on plaintiff’s negligence.

I. Section 653(b)(1) Bar

Turning to the first issue, the OSHA regulation applies only if OSHA’s so-called “negative preemption” provision in section 653(b)(1) does not oust OSHA of its regulatory authority in the circumstances of this case. See Clark v. Providence and Worcester Railroad Co., Civil Action No. 09-10328-FDS, 2011 WL 3236087 (D. Mass. July 26, 2011).[1] Section 653(b)(1) provides that:

> (b)(1) Nothing in this chapter shall apply to working conditions of employees with respect to which other Federal agencies . . . exercise statutory authority to prescribe or enforce standards or regulations affecting occupational safety or health.

29 U.S.C. § 653. As explained by the First Circuit in PBR, Inc. v. Secretary of Labor, 643 F.2d 890 (1st Cir. 1981), the exemption in section 653:

> is activated by statutory authority in another agency and an actual exercise of such authority by the agency. Southern Pacific Transportation Co. v. Usery, 539 F.2d 386, 389 (5th Cir. 1976). The exemption does not oust OSHA of its regulatory authority where such an agency has regulatory

[1] Keolis attached the court’s well-reasoned decision in Clark as an exhibit to its motion in limine. (Docket Entry # 40-5).

authority but has not exercised such authority.

PBR, Inc. v. Secretary of Labor, 643 F.2d 890, 896 (1st Cir. 1981). The twofold inquiry therefore requires: (1) the existence of statutory authority in another agency; and (2) the actual exercise of that authority by the agency. Id.

As to the first line of inquiry, Keolis aptly points out that the Federal Railway Safety Act, 49 U.S.C. §§ 20101-21311, endowed the Department of Transportation, acting through the Federal Railroad Administration ("FRA"), with broad powers to "'prescribe regulations and issue orders for every area of railroad safety.'" (Docket Entry # 40) (quoting 49 U.S.C. § 20103). Moreover, as stated in a decision by the Occupational Safety Health Review Commission, "There is no doubt that the FRA has the statutory authority to regulate the safety of employees in the railroad industry." Consolidated Rail Corp., 10 O.S.H. Cas. (BNA) ¶ 1577 (O.S.H.R.C. Apr. 30, 1982) ("Conrail"); see 49 U.S.C. § 20101. Keolis is therefore correct.

The second aspect of the inquiry turns upon the existence of the "actual exercise of" FRA's authority. PBR, Inc., 643 F.2d at 896. Keolis submits that a 1978 policy statement (Docket Entry # 40-2) which, to quote the statement, concerns "the relationship between the respective jurisdictions of FRA and OSHA," 43 Fed. Reg. 10584 (March 14, 1978), is an actual exercise of FRA's authority. (Docket Entry # 40). Plaintiff maintains that the

policy statement was not an exercise of FRA's authority and, relying on Pratico, 783 F.2d at 262, notes there is no FRA regulation "addressing safety on the aisles and passageways around trains in a coach house." (Docket Entry # 49, p. 2) (Docket Entry # 32, p. 2).

Overall, the policy statement provides that OSHA regulations apply subject to "three principal exceptions." 43 Federal Registrar 10587 (March 14, 1978). In pertinent part, the policy statement states that:

> OSHA regulations concerning working surfaces deal with such matters as ladders, stairways, platforms, scaffolds and floor openings. Generally, these regulations are applicable in railroad offices, shops, and other fixed work places. There are however *three principal exceptions* to the rule.

43 Fed. Reg. 10587 (emphasis added). Keolis relies on two of these "three principal exceptions" to the applicability of the OSHA aisles and passageways regulation. (Docket Entry # 40).

A. Rolling Stock Exception

First, Keolis cites the exception applicable to "the safe movement of rolling stock through railroad repair shops." 43 Fed. Reg. 10587. The applicable language in the policy statement provides that:

> . . . [A]s the agency which has exercised jurisdiction over railroad operations, FRA is responsible for the safe movement of rolling stock through railroad repair shops. OSHA requirements for general industry are in some respects inconsistent with the optimum safety of employees in this unique environment where hazards from moving equipment predominate. Therefore, OSHA regulations on guarding of open pits, ditches, etc., would not apply to inspection pits

> in locomotive or car repair facilities. FRA is better equipped to assess proper clearance technology and employee knowledge of existing industry practices as well as the relevance and severity of hazards represented by specific injury occurrence codes in accident/incident reporting statistics. FRA is responsible for determining what additional regulatory steps, if any, may be necessary in this area in light of overall safety considerations.

43 Fed. Reg. 10587.

The Occupational Safety Health Review Commission in Conrail determined that the FRA policy statement *is* an exercise of FRA's statutory authority over open pits and platforms in railroad repair facilities. See Consolidated Rail Corp., 10 O.S.H. Cas. (BNA) ¶ 1577 (O.S.H.R.C. Apr. 30, 1982) (quoting the policy statement's "rolling stock" and "walkways beside the tracks" exceptions). As stated in Conrail:

> In issuing the policy statement, the FRA exercised its statutory authority over the cited working conditions, which concern the "movement of rolling stock through repair shops" and "the guarding of open pits . . . in repair facilities" in the railroad industry. Such an exercise preempts OSHA from enforcing its standards with respect to working conditions to which the FRA has said OSHA standards should not apply.

Id. (quoting policy statement, 43 Fed. Reg. 10587).

It is true that the Pratico decision found no preemption of OSHA regulations applicable to a jack, 29 C.F.R. §§ 1910.241(d), 1910.244, due to the absence of FRA regulations regulating the working condition at issue. See Pratico, 783 F.2d at 262 ("review of these regulations reveals . . . no regulations covering the procedure and equipment to be used," i.e., a jack,

to lift "brasses"). Here, the issue is one of scope as to whether the "rolling stock" exception in the policy statement extends to the working condition at issue in this case. Contrary to plaintiff's position that a FRA regulation specific to aisles and passageways is required (Docket Entry # 32, p. 2), the absence of a FRA regulation specific to open pits and platforms in Conrail did not prevent the policy statement from constituting an exercise of statutory authority under section 653(b)(1). The Commission rejected the viewpoint that the absence of a regulation equates to an absence of the exercise of statutory authority:

> Specifically, the FRA, as the experienced and expert agency in railroad safety matters, determined that the hazard of open pits and platforms in railroad repair facilities should go unregulated . . . "Furthermore, as the dominant agency in its limited area, the FRA can displace OSHA regulations by articulating a formal position that a given working condition *should go unregulated* or that certain regulations—and no others—should apply to a defined subject." This is precisely what the FRA has done through its policy statement: articulated a formal position that certain working conditions in the railroad industry should go unregulated.

Consolidated Rail Corp., 10 O.S.H. Cas. (BNA) ¶ 1577 (O.S.H.R.C. Apr. 30, 1982) (quoting Southern Pacific Transportation Co. v. Usery, 539 F.2d 386 (5th Cir. 1976)) (emphasis added).

A more recent decision by the Occupational Safety Health Review Commission in 1993 after Pratico reiterates a similar effect and reach of the exemptions in the policy statement:

The FRA's exercise of regulatory authority is in the form of

> a statement of policy . . . In order to give formal notice of the policy, the FRA published this statement in the Federal Register. 43 Fed. Reg. 10583 (1978). Thereby, "as the dominant agency in its limited area, the FRA [could] displace OSHA regulations by articulating a formal position that a given working condition *should go unregulated* [by a federal standard] . . . . .." See Southern Pacific Transp. Co. v. Usery, 539 F.2d 386, 391–92 (5th Cir. 1976), cert. denied, 434 U.S. 874 (1977) ("Southern Pacific") (positing that another agency can preempt OSHA regulations by formally deciding against issuing any standard or regulation); Velasquez v. So. Pacific Transp. Co., 734 F.2d 216 (5th Cir. 1984) (treating the FRA policy statement as an exercise of statutory authority); see also, In Re: Inspection of Norfolk Dredging Co., 783 F.2d 1526, 1530 (11th Cir.1986) ("Norfolk Dredging") (accepting that another agency can preempt OSHA regulations by formally deciding against issuing any standard or regulation). Thus, in 1982, the Commission [in Conrail] held that the FRA's policy statement is an exercise of statutory authority which, pursuant to section 4(b)(1) of the Act, is capable of exempting the surroundings and hazards mentioned by the FRA from being governed by OSHA's regulations and enforcement. Consolidated Rail Corp., 10 BNA OSHC 1577, 1580–81, 1982 CCH OSHD ¶ 26,044, pp. 32,708–09 (No. 79–1277, 1982).

Consolidated Rail Corp., 16 O.S.H. Cas. (BNA) ¶ 1033 (O.S.H.R.C. Mar. 31, 1993). Finally, the reasoning in Clark and the authority the decision cites vis-à-vis the "walkways beside the tracks" exception apply equally to the "rolling stock" exception in the policy statement. See Clark v. Providence and Worcester Railroad Co., 2011 WL 3236087, at *3-4.

B. Walkways Exception

Second, Keolis relies on the exception applicable to "walkways beside the tracks in yards or along the right-of-way." 43 Fed. Reg. 10587. The applicable language in the policy statement reads as follows:

> Third, the OSHA regulations would not apply to ladders, platforms, and other surfaces on signal mass, centenary systems, railroad bridges, turntables and similar structures or to walkways beside the tracks in yards or along the right-of-way. These are areas which are so much a part of the operating environment that they must be regulated by the agency with the primary responsibility for railroad safety.

43 Fed. Reg. 10587.

For reasons stated by the court in Clark, the policy statement and the walkways exception in particular are sufficient to trigger the negative preemption of section 653 and oust the application of the aisles and passageways OHSA regulation. See Clark v. Providence and Worcester Railroad Co., 2011 WL 3236087, at *3-4. In addition to the reasoning in Clark and the three decisions it cites,[2] the Conrail decision similarly concludes that FRA exercised its statutory authority via the policy statement noting the walkways exception as well as the rolling

---

[2] The court in Clark cites the following cases as support for the principle that the exception for walkways in the policy statement triggers the negative preemption in section 653(b)(1):

> See Chao v. Mallard Bay Drilling, Inc., 534 U.S. 235, 243, 122 S.Ct. 738, 151 L.Ed.2d 659 (2002) ("[A]nother agency may 'exercise' its authority within the meaning of [§ 653(b)(1)] either by promulgating specific regulations or by asserting comprehensive regulatory authority over a certain category ...."); Assen of Am. R.Rs. v. Dep't of Transp., 38 F.3d 582, 587 (D.C. Cir. 1994) (1978 policy statement was sufficient to remove OSHA jurisdiction over specifically-listed areas); Velasquez v. Southern Pacific Transp. Co., 734 F.2d 216, 218 (5th Cir. 1984) ("It is not necessary that the FRA implement specific regulations for these areas; an assertion of authority in a policy statement is sufficient to displace OSHA regulations.").

Clark v. Providence and Worcester R. Co., 2011 WL 3236087, at *4.

stock exception. See Consolidated Rail Corp., 10 O.S.H. Cas. (BNA) ¶ 1577 (O.S.H.R.C. Apr. 30, 1982). In sum, as a general principle the “rolling stock” and “walkways” exceptions constitute exercises of authority sufficient to trigger section 653(b)(1) preemption and prevent the admission of the OSHA regulation into evidence.

C. The Exceptions as Applied to the Accident

That said, the question remains whether the accident and the facts in this case implicate either exception. See Consolidated Rail Corp., 16 O.S.H. Cas. (BNA) ¶ 1033 (O.S.H.R.C. Mar. 31, 1993) (remanding action because “there is no factual record from which to understand exactly what relationship these scaffolds have to the policy statement’s assertion that ‘OSHA regulations would not apply to . . . . platforms and other surfaces on . . . railroad bridges . . . or to walkways beside the tracks in yards or along the right-of-way’”); cf. Clark v. Providence and Worcester Railroad Co., 2011 WL 3236087, at *4 (“plaintiff’s injury appears to have resulted from a condition on a ‘walkway beside tracks in yards’”). Because there is an inadequate factual record from which to gauge the relationship between the accident and the scope of the “rolling stock” exception in the policy statement at this juncture, it is premature to bar the admission into evidence of the OSHA regulation as subject to the negative preemption in section 653(b)(1). See Consolidated Rail

Corp., 16 O.S.H. Cas. (BNA) ¶ 1033 (O.S.H.R.C. Mar. 31, 1993). Moreover, plaintiff's position that the accident did not involve a moving coach (Docket Entry # 49, pp. 2-3) does not necessarily foreclose the application of the exception. See Miller v. Chicago and North Western Transportation Co., 925 F.Supp. 583 (N.D. Ill. 1996) (FRA policy statement applied to locomotive at rest in repair facility in which plaintiff employee fell into maintenance pit that lacked protective guards); see also Consolidated Rail Corp., 10 O.S.H. Cas. (BNA) ¶ 1577 (O.S.H.R.C. Apr. 30, 1982) ("[b]ecause the conditions cited in this case [guarding for open floor holes and platforms in repair shop] involve perimeter guarding for openings associated with moving railroad we conclude that those conditions fall within the policy statement").

In the event the exception applies, the issue remains whether the area or location is an aisle or passageway within the meaning of the OSHA regulation. Keolis argues that the area where the accident took place is not an aisle or passageway subject to the regulation. (Docket Entry # 40, p. 8). The jury will therefore need to determine the facts and circumstances of the accident, including whether the accident occurred in an aisle and whether the cable was an "obstruction in [an] aisle[] that could create a hazard" under the regulation. 29 C.F.R. § 1910.22(b)(1).

With respect to the “walkway beside the tracks in yards” exception, it appears the accident took place at a repair facility, which plaintiff maintains is not a train yard or right-of-way (Docket Entry # 49, p. 3). Keolis is therefore ordered to provide a brief addressing the meaning of “tracks in yards” in the policy statement, 43 Fed. Reg. 10587, as it applies to a repair facility and, in particular, the repair facility in this case on or before January 31, 2018.[3] Absent a stronger showing that the “walkways beside the tracks in yards” exception extends to the working condition at the repair facility in this case, this court declines to apply the exception as a means to bar the application of the OSHA regulation under section 653(b)(1).

II. Negligence Per Se

Relying on Pratico, 783 F.2d at 262-266, plaintiff argues that the aisles and passageways OSHA regulation applies and renders Keolis liable under the doctrine of negligence per se. (Docket Entry # 32). Keolis maintains that, if the regulation is not preempted and applies to the facts of this case, then an instruction to the jury that it is only “‘evidence of negligence’” is appropriate. (Docket Entry # 41, pp. 2-3).

In a decision by the First Circuit after Pratico not

[3] A failure to file a brief and argue the issue waives the applicability of the policy statement’s exception for “walkways” as reaching the working condition in this case and resulting in preemption under section 653(b)(1).

involving an FELA cause of action, the court questioned the continued viability of an OSHA regulation as constituting negligence per se. Elliott v. S.D. Warren Co., 134 F.3d 1, 4 (1st Cir. 1998). In limiting Pratico to FELA claims, the Elliott court nevertheless criticized the decision thereby raising significant doubt regarding its continued viability even in the context of an FELA claim:

> At the time this court decided Pratico, we had very little guidance from our sister circuits . . . . In the past twelve years, however, at least four other courts of appeals have considered when, if ever, a violation of an OSHA regulation might constitute negligence per se . . . Three of these four courts have held squarely that, because the OSH Act does not create a private right of action, a violation of an OSHA regulation never can be equated with negligence per se. See Robertson, 32 F.3d at 410–11; Ries, 960 F.2d at 1158–65; Albrecht, 808 F.2d at 332–33. The Sixth Circuit, like the Fifth, leaves open the possibility that a violation of an OSHA regulation may, in some cases governed by federal law, constitute negligence per se, see Ellis, 63 F.3d at 477; Rabon, 672 F.2d at 1238, but it is rare in either circuit for a court actually to uphold a finding of negligence per se on this basis. Silhouetted against this backdrop, the Pratico holding is of questionable validity.

Elliott v. S.D. Warren Co., 134 F.3d at 4. In light of Elliot and for reasons elucidated in Falconer v. Penn Maritime, Inc., 397 F. Supp. 2d 68, 71-73 (D.Me. 2005),[4] this court declines to adhere to the negligence per se doctrine.

III. Comparative Negligence

The application of section 53 and comparative negligence in

[4] Keolis attached a copy of the Falconer decision to its brief. (Docket Entry # 41-1).

the context of the aisles and passageways OSHA regulation is more problematic. Plaintiff seeks to prevent Keolis from relying on comparative negligence because Pratico held that OSHA regulations are considered safety statutes under section 53 and therefore bar Keolis from asserting comparative negligence as a defense. (Docket Entry # 32). Plaintiff also relies on a decision by this court in Kelly v. Keystone, 281 F. Supp. 2d 313 (D. Mass. 2003). Keolis again submits that the aisles and passageway OSHA regulation does not apply to the facts of this case. (Docket Entry # 41). It also asserts that section 53 does not preclude comparative negligence as reasoned in Falconer, 397 F. Supp. 2d at 73-75, and a number of other decisions after Pratico. (Docket Entry # 41).

As previously explained, absent preemption, the jury will need to decide if the area where plaintiff was injured is an "aisle" or "passageway" within the meaning of the OSHA regulation and whether the cable was an obstruction that could create a hazard under the regulation. Thus, in order to reach the issue of comparative negligence, the jury will need to decide these facts and circumstances of the accident in plaintiff's favor. If the jury decides that the facts do not fall within the reach of the OSHA regulation, then the regulation does not apply and would not constitute a safety statute under section 53. The verdict form can be fashioned in a way that will allow this court to

resolve the applicability of a reduction based on plaintiff's negligence under Pratico, if necessary, in a post-judgment motion. Juries are presumed to follow instructions.

## CONCLUSION

In accordance with the foregoing discussion, the plaintiff's motion in limine (Docket Entry # 32) is **DENIED** as to negligence per se and **DENIED** without prejudice as to comparative negligence. Keolis' motion in limine to exclude evidence (Docket Entry # 40) is **DENIED** without prejudice. Keolis' remaining motion in limine (Docket Entry # 41) is **ALLOWED** as to negligence pe se and **DENIED** without prejudice as to a comparative negligence bar.

/s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge